UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1:17-cr-00269-DCN |
|---|---|
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| ABEL ARTURO NEGRETE, | |
| Defendant. | |

# I. INTRODUCTION

Pending before the Court is Defendant Abel Arturo Negrete's pro se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 48. The Government has filed an opposition to the Motion and the matter is ripe for the Court's consideration. Dkt. 49.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court finds good cause to DENY Negrete's Motion.

# II. BACKGROUND

On May 5, 2016, Negrete was convicted of domestic violence with traumatic injury, after abusing his pregnant wife. Dkt. 37. While on probation for that offense, Negrete sold

two semi-automatic handguns to a confidential human source for the Federal Bureau of Investigation, one of which was stolen. *Id.* On October 11, 2017, a federal grand jury indicted Negrete on two counts of Unlawful Possession of a Firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id*. Negrete subsequently pleaded guilty to one count of Unlawful Possession of a Firearm, the Government dismissed the second count, and on August 14, 2018, the Court sentenced Negrete to sixty-three (63) months imprisonment and three years of supervised release. Dkt. 41. Negrete is currently incarcerated at a Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton").

On April 26, 2020, Negrete submitted a request to the Warden of FCI Fairton to be placed on home confinement due to his concern that his mother, who is the sole caregiver and caretaker of Negrete's three minor children, may contract COVID-19. Dkt. 48-3, at 5. Additionally, Negrete expressed concern for his own health stating he has Asthma and High Blood Pressure. *Id.* The Warden never responded.

On November 5, 2020, Negrete filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) with the Court requesting that he be released to home confinement due to his vulnerability to COVID-19 and his mother's situation. Dkts. 48, 50. Negrete cited his underlying health conditions, in conjunction with the Covid-19 pandemic, as reasons justifying his release. Negrete also suggested that his mother, the caregiver of his three children, has become incapacitated and that he is the only available caregiver for his children. The Government has opposed Negrete's Motion. Dkt. 49. Negrete replied on November 31, 2020. Dkt. 50.

## III. LEGAL STANDARD

Defendant seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[1] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Although the evidence in the record is not clear that the Warden at FCI Fairton even received Negrete's request, Negrate states in his motion that he filed a request with the Warden at FCI Fairton on August 13, 2020. Dkt. 48. That said, the notice Negrete attached to his Motion was dated April 26, 2020. Thus, it appears Negrete may have filed something between April and August of 2020; however, the Court cannot be sure. Negrete filed his motion with the Court on November 5, 2020, over 30 days after Negrete suggests that he sent a request to the warden of FCI Fairton. In an effort to afford Negrete every benefit, the Court assumes without deciding that he exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A).

**B. Extraordinary and Compelling Reasons**

Having determined Negrete has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in Negrete's sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Negrete bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). Because this is no longer the law with the FSA, which allows defendants to seek relief directly from the court, this "leaves district courts in a conundrum." *Id.* (explaining that Congress now allows district courts to grant petitions "consistent with the applicable policy statements" from the Sentencing Commission, although the Sentencing Commission "has not made the policy statements for the old regime applicable to the new one").

A growing number of district courts have concluded that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant compassionate release." *Rodriguez*, 411 F. Supp. 3d at 682 (collecting cases). However, other courts have concluded "a judge may not stray beyond the specific instances listed in [U.S.S.G. § 1B1.13]." *Mondaca*, 2020 WL 1029024, at *3 (citations omitted); *see also*

*United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (stating U.S.S.G. § 1B1.13's descriptions of extraordinary and compelling reasons "remain current, even if references to the identity of the moving party are not").

The Court need not decide the issue because Negrete suggests two of the specific scenarios set out in the Sentencing Commission's policy statement applies here. *Brown*, 411 F. Supp. 3d at 451 (district courts "still must act in harmony with any sentencing policy guidelines that remain applicable and the § 3553(a) factors"). Specifically, Negrete seeks compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[3] Negrete argues that his Hypertension and Asthma, in conjunction with the COVID-19 pandemic, constitute extraordinary and compelling reasons warranting his release. Dkts. 48, 50. Additionally, Negrete seeks compassionate release under "certain family circumstances," claiming that the caregiver of his minor children (his own mother) has become incapacitated and he is the only available caregiver

---

[3] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:
    (A)    Medical Condition of the Defendant.—
    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—
    (I)    suffering from a serious physical or medical condition,
    (II)    suffering from a serious functional or cognitive impairment, or
    (III)    experiencing deteriorating physical or mental health because of the aging process,
    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

for these children. *Id.*

Negrete's medical condition could place him at a higher risk of contracting a severe form of COVID-19. The CDC lists Hypertension and Asthma as underlying health conditions which might place individuals at an increased risk of severe illness from COVID-19. [4] However, Negrete never provided his medical records to prove the existence of Asthma or Hypertension. Further, his Asthma must be classified as moderate to severe Asthma to qualify as an extraordinary and compelling reason to warrant release. Negrete failed to offer any evidence to support the urgency of his medical condition. Thus, the Court cannot find there is an extraordinary and compelling reason under the FSA for his medical condition.

As for the incapacitation of a caregiver, BOP has issued a Program Statement providing guidance to the administration as well as the courts on this scenario. BOP defines incapacitation of a caregiver as someone who "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." *United States v. Bolden*, No. CR16-320-RSM, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020), appeal dismissed, No. 20-30168, 2020 WL 6580183 (9th Cir. Aug. 26, 2020) (*citing* BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 7-8). Additionally, to qualify for release, the inmate must provide verifiable information showing the incapacitation of

---

[4] *CDC Updates, Expands List Of People At Risk Of Severe COVID-19 Illness, Center for Disease Control and Prevention* (June 25, 2020), https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19.html.

the caregiver, proof that the caregiver is the only member of the family who can care for the children, verifiable documentation that the inmate is the parent of the children, the age and names of the children, and a release plan. *Id.*

Here, Negrete asserts that his mother, Kathy Limon, the appointed legal guardian for his children, has various medical conditions—including stomach cancer—which are making it extremely difficult for her to perform her role as a caregiver. Dkts. 48, 50. Negrete argues that his mother had surgery to remove her stomach cancer. *Id.* However, her condition has not improved and the various medications she is on is causing her fatigue. Because of her health conditions, Negrete suggests he qualifies for compassionate release to care for his mother and his children.

Negrete has submitted the required documentation that he is the parent of the children, the age and names of the children, and the documentation that appointed his mother as temporary guardian of his children. Dkt. 48-3. However, it is unclear whether Negrete's mother is the only member of the family who can care for the children. Negrete and his mother have both provided statements to the court asserting this argument, but Negrete has provided no proof of the family's situation. Additionally, the record only includes medical records showing that Negrete's mother was experiencing abdominal pain and was diagnosed with long standing diverticulosis.[5] There is no verifiable documentation of cancer. The Court does not dismiss Limon's medical conditions; however, the record

---

[5] *Diverticulosis and Diverticulitis, MedlinePlus* (Apr. 9, 2021), https://medlineplus.gov/diverticulosisanddiverticulitis.html

MEMORANDUM DECISION AND ORDER - 8

does not indicate Limon is incapacitated. Although Negrete has stated that Limon has stomach cancer and has had surgery to remove the cancer, there is no proof in the record that this is true. Therefore, the Court cannot find there is an extraordinary and compelling reason under the FSA for Limon's incapacity as a caregiver.

Additionally, as to Negrete's vulnerability to COVID-19, there is no evidence to suggest that Negrete would be at a decreased risk to contract the virus if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less exposed to the pandemic by remaining in prison than they would be if released. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"); *United States v. Shabudia*, 2020 WL 2464751, at *2 (N.D. Cal. May 12, 2020) (denying motion for elderly inmate with high cholesterol; observing that "while the Court acknowledges [defendant's] worries about the spread of COVID-19 in prisons, the facility in which [defendant] is housed currently has no confirmed cases of COVID-19").

Currently, FCI Fairton —where Negrete is incarcerated—has reported 270 cases of COVID-19 among inmates and 1 death.[6] Conversely, Nampa, Idaho, where Negrete would reside if released, has had over 21,984 cases of COVID-19, as well as 291 deaths.[7] Considering the high level of cases in Nampa, the Court cannot find that Negrete would be at less risk if released into the community.

Finally, the Government argues that the application of the 18 U.S.C. § 3553(a) factors weigh against Negrete's release at this time. Dkt. 49.[8] In particular, the Government asserts that Negrete is still a danger to the community. *Id.* The Court agrees. Negrete's criminal history is extensive and includes five prior felonies, "taking a vehicle without the owner's permission, domestic violence with injuries and terrorist threats, false personation of another, and domestic battery with traumatic injury." *Id.* Additionally, the Government

---

[6] *Coronavirus*, FEDERAL BUREAU OF PRISONS (last updated Jan. 19, 2021), https://www.bop.gov/coronavirus/.

[7] *Coronavirus (COVID-19)*, The Weather Channel (last updated Apr. 12, 2021), https://weather.com/coronavirus/l/Nampa+ID?canonicalCityId=b4db966c3a17471b11ed5e242d7059988aa30ce77e0ed5e8293fb6eb4fe1e7e8

[8] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

argues the conviction in this case, possession of a firearm, indicates Negrete was obtaining and distributing guns is dangerous to the community. The Court agrees with this argument as well.

The distribution of firearms is a serious offense which puts the community at risk. Further, Negrete's history of domestic abuse also played an important role in Negrete's initial sentence. Reducing Negrete's term of incarceration from 63 months to essentially 32 months, does not adequately reflect the seriousness of his actions. Therefore, the Court agrees there are compelling reasons for denying Negrete's motion.

In sum, the Court finds that Negrete has exhausted his administrative remedies. However, Negrete has failed to demonstrate an "extraordinary and compelling reason" for his release, and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Negrete at this time. Accordingly, the Court must DENY Negrete's motion.

## V. ORDER

The Court HEREBY ORDERS:

1. Negrete's Motion for Compassionate Release (Dkt. 48) is DENIED.

DATED: May 12, 2021

David C. Nye
Chief U.S. District Court Judge